J-S01037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AKEITA HARDEN | : | |
| | : | |
| Appellant | : | No. 636 MDA 2020 |

Appeal from the PCRA Order Entered March 11, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0000558-2014

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED FEBRUARY 19, 2021**

Appellant, Akeita Harden, appeals from the order of the Court of Common Pleas of Lebanon County dismissing, without a hearing, her patently untimely first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  As both her *pro se* and counseled amended petitions failed to plead an exception to the PCRA's one-year time bar, the PCRA court lacked jurisdiction to address her claims of ineffective assistance of trial counsel.  Accordingly, we affirm.

In the disposition of Appellant's direct appeal, ***Commonwealth v. Harden***, No. 625 MDA 2016, 2017 WL 626744 (Pa. Super. Feb. 15, 2017), this Court set forth the following underlying facts and procedural history

_____

[*] Former Justice specially assigned to the Superior Court.

pertinent to Appellant's jury trial on charges of criminal homicide, attempted homicide, aggravated robbery, and criminal conspiracy:

On March 10, 2014, Officer James Gross responded to a report of a possible shooting at 714 Fox Ridge Lane. Upon his arrival at the scene, Officer Gross observed a man walk out of the townhouse to which he was responding. Officer Gross asked the man to stop, but the man ignored this request and entered a waiting red Cadillac SUV where a woman was seated in the driver's seat. Officer Gross then saw another man leave the same area. At that point, Officer Gross withdrew his weapon and ordered the second man to stop. The second man also ignored Officer Gross and got into the same SUV, which reversed out of the parking lot.

Officer Gross followed the SUV, which led officers on a high speed chase on Route 897 into Lebanon. During the pursuit, Officer Gross observed an object thrown from the car which was later identified as a shotgun. When the vehicle stopped on Guilford Street, the two male passengers exited the vehicle and ran in different directions while the female drove away in the SUV. Officer Gross was able to apprehend one of the male passengers two blocks away and identified him as Rick Cannon (hereinafter "Cannon").

Officers were able to identify Appellant as the female driver after she illegally parked the SUV in a residential property and ran away. When the officers approached Appellant, she immediately claimed to have done nothing wrong and asserted her boyfriend was abusing her. Upon searching the SUV and the area from which the passengers fled, officers found cocaine, a handgun, a key, a watch, a ring, a roll of duct tape, and the cell phone of Appellant's paramour, Eddie Williams ("Williams"). The officers identified Williams as the second male passenger in the SUV. Williams was apprehended months later in Philadelphia for a narcotics violation.

Parallel in time to this high speed chase, law enforcement officers investigated the shooting reported at 714 Fox Ridge Lane and discovered two male victims that had been shot in the head. The victims were later identified as Marcus Ortiz ("Ortiz") and Keith Crawford ("Crawford"). While Crawford survived the attack with serious injuries, Ortiz did not survive. Dr. Supriya Kuruvilla

performed Ortiz's autopsy and concluded that the victim sustained a contact gunshot wound to the head, resulting from a gun being pressed against his head.

Appellant was charged with criminal homicide, attempted homicide, and several counts of aggravated assault, robbery, and criminal conspiracy along with related charges. Appellant and Williams were tried in a joint jury trial which commenced on October 5, 2015. The Commonwealth's theory of the case was that Williams and Appellant conspired to rob and murder Crawford, as the prosecution indicated that the evidence would show that the three individuals were involved in a drug dealing enterprise and disagreed about how their profit should be distributed.

The Commonwealth presented the testimony of Jackie Brooks, who allowed Appellant to stay overnight in her home the night before the murder.[1] Brooks knew Appellant was in a relationship with a man named "Jamal" and indicated that Appellant has the name "Jamal" tattooed on her arm. Brooks agreed to allow Appellant to borrow her red Cadillac SUV the next morning. At approximately 10:30 a.m. on the day of the victims' murder, Appellant called Brooks and indicated that she and Williams had been shot at in Brooks's vehicle. Appellant told Brooks to report the vehicle as stolen as she and Williams had abandoned it after fleeing the scene.

Amanda Gaderon testified that she was in a relationship with Crawford at the time of the shooting. She was able to identify the ring, watch, and keys that officers found in their investigation of the fleeing SUV as belonging to Crawford. Gaderon admitted that Crawford and Williams were partners in a drug dealing business, where Crawford supplied the drugs and the two men dealt them. Gaderon indicated that Crawford paid rent for Williams and Appellant's apartment. However, after Williams and Crawford had a heated phone conversation, the men ceased all contact by February 2014.

Brian Eisenhour testified that he owned a particular rental property in Lebanon where Crawford was previously a tenant. Crawford suggested that Eisenhour rent to his cousin named "Jamal;" but Jamal and his girlfriend did not pay rent regularly. Eisenhour would seek rent from Crawford. Eventually, Eisenhour

- 3 -

evicted Jamal and his girlfriend from the apartment for their failure to pay rent.

Detective Michael DiPalo testified that he interviewed Appellant upon her arrest. Appellant claimed on the day of the murder, she took the red SUV to pick up her son in Harrisburg. She also indicated that she picked up two men: Anthony Johnson and his cousin, "Tank." She indicated that they went to Crawford's apartment where Crawford, Johnson, and Tank proceeded to make drugs. While Appellant waited in the SUV, Johnson and Tank left the apartment and ordered her to drive away. Appellant claimed that both men escaped without capture.

Detective DiPalo read into evidence a letter written by Appellant to an individual named Hotters. In the letter, Appellant discussed her financial troubles, indicating that "niggas...was fucking money up in a time that we needed all but for months. Shit was getting fucked up. Bonds and loyalties was being broken. It was just a hard month, February to March." N.T. Trial, 10/7/15, at 481. Appellant also admitted that she knew Williams intended to confront Crawford "about money being fucked up and the work, and he felt like he was bringing new niggas in at a time when shit was all fucked up..." N.T. Trial, 10/7/15, at 487. Moreover, Detective DiPalo indicated that he was able to retrieve from Appellant's cell phone multiple text messages sent on the night before the victim's murders between Appellant and Cannon.

Crawford testified at trial and indicated that Williams was the individual who shot him and stole his watch and ring. In addition, Crawford also asserted that both Appellant and Cannon were present at his apartment on the morning of the shooting.

Appellant testified in her own defense. She acknowledged that Williams and Crawford were partners in a drug dealing enterprise and admitted that the men often fought over money issues related to their business. Appellant conceded that she was involved in the partnership as she would frequently drive Williams to make "drop-offs with money and drugs." N.T. Trial, 10/9/16, at 774. She recalled that she traveled to New York City with Williams and Crawford to buy kilos of cocaine and transport it back to Lebanon. Appellant indicated that she and Williams were at Crawford's home every day where the men would cook up crack cocaine, package the drugs, and divide them amongst themselves.

However, Appellant shared that she believed Williams should end the partnership with Crawford and start his own drug dealing business. Appellant explained that she felt Crawford was "flashy" and "arrogant" with his wealth, buying expensive cars and jewelry. N.T. Trial, 10/9/16, at 832. At the time of the murder, Appellant was pregnant with Williams's child, she had no car, and was living with her mother. Appellant conceded that Williams told her that Cannon, Williams's cousin, robbed drug dealers. She admitted that on the morning of the murder, she drove Williams and Cannon to Crawford's place in the early morning hours, when she had never done so before this occasion.

On rebuttal, Detective DiPalo testified and entered into evidence portions of an interview Appellant gave to police on March 21, 2014. **See** N.T. 10/12/16, at 1028–1038. On the recording, Appellant admitted that she overheard Williams and Cannon discussing a plan to rob and murder Crawford approximately one to two weeks before Crawford's death.

At the conclusion of the trial, the jury convicted Appellant of murder in the second degree and found her guilty on all the other charges. On December 2, 2015, the trial court sentenced Appellant to life imprisonment. The same day, Appellant filed a post-sentence motion, which the trial court denied on March 21, 2016. Appellant filed a timely notice of appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises one multi-faceted claim on appeal, arguing that "the Commonwealth's evidence failed to establish that Appellant acted with the required specific intent to conspire or be an accomplice in the commission of murder, aggravated assault, or robbery.

*Commonwealth v. Harden*, No. 625 MDA 2016, 2017 WL 626744, at **1-3

(Pa.Super. Feb. 15, 2017).

The Superior Court panel rejected Appellant's sufficiency challenge as

meritless and affirmed judgment of sentence. *Id.*, at *6. On March 17, 2017,

thirty days after this Court's disposition of her direct appeal, Appellant's

- 5 -

judgment of sentence became final as Appellant had filed no petition for allowance of appeal in our Supreme Court. *See* 42 Pa.C.S. § 9545(b)(3) (explaining that for purposes of the PCRA, a petitioner's judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of United States, or at the expiration of time for seeking review); *see also* Pa.R.A.P. 1113 ("[A] petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed.").

On October 11, 2019, more than two and one-half years after Appellant's judgment of sentence became final, she filed a patently untimely *pro se* PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1) (stating that in order to be considered timely, a PCRA petition shall be filed within one year of the date that the judgment becomes final). The PCRA court appointed counsel and entered an order directing the Commonwealth to show cause why a hearing should not be granted. The Commonwealth filed a response on November 12, 2019, in which it argued that Appellant's petition was both untimely and unsupported by a claim asserting an exception to the statutory time-bar.

On January 13, 2020, the PCRA court notified Appellant of its intent to dismiss the PCRA petition on grounds of untimeliness. On January 20, 2020, appointed counsel filed a motion to withdraw his appearance, determining Appellant's *pro se* petition to be untimely and ineligible for a time-bar exception. On February 18, 2020, after conducting a hearing on counsel's

motion to withdraw, the PCRA court entered an order directing counsel to supply Appellant with a compliant **Turner-Finley** letter and advising that it would, thereafter, enter a Pa.R.Crim.P. 907 order dismissing Appellant's petition in 20 days unless it received a pleading in the interim.

On March 9, 2020, counsel elected to file an amended petition raising and detailing issues of ineffective assistance of counsel but failing to address the patent untimeliness of Appellant's petition. On March 11, 2020, the PCRA issued an order dismissing, without a hearing, the untimely petitions before it for lack of jurisdiction. This timely appeal followed.

Appellant asserts that the PCRA court erred in denying relief on her claims of trial counsel's ineffective assistance. Notably, neither her court-ordered Rule 1925(b) concise statement of matters complained of on appeal nor her appellate brief contains a claim that her petition qualifies for an exception to the PCRA time-bar that would confer jurisdiction upon this Court to address the merits of her appeal. In fact, she concedes she has filed this appeal for the sole purpose of exhausting avenues necessary for the filing of federal *habeas corpus* relief.

Our standard for reviewing an order dismissing a PCRA petition as untimely is well settled:

> Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa.Super. 2014) (citations omitted).

The "PCRA's timing provisions are jurisdictional in nature, and no court may entertain an untimely PCRA petition." *Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020) (citations omitted). As noted *supra*, a PCRA petition shall be filed within one year of the date on which the petitioner's judgment becomes final. *Commonwealth v. Valentine*, 928 A.2d 346, 348 (Pa.Super. 2007) (citations omitted); 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." § 9545(b)(3).

Courts may consider a PCRA petition filed more than one year after a judgment of sentence becomes final only if the petitioner pleads and proves one of the following three statutory exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

It is the PCRA petitioner's "burden to allege and prove that one of the timeliness exceptions applies." ***Commonwealth v. Albrecht***, 994 A.2d 1091, 1094 (Pa. 2010) (citation and quotation marks omitted). As was the case with Appellant's petition filed below, both her Rule 1925(b) concise statement and her appellate brief fail to plead, let alone prove, that *any* of the timeliness exceptions set forth at section 9545(b)(1)(i)-(iii) applies to her case. For this reason, we lack jurisdiction to address the merits of her claims. ***See Albrecht***, ***supra***.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/19/2021